***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission adopts the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. The employer-employee relationship existed between plaintiff and McLean Foods in that plaintiff was employed by defendant-employer McLean Foods, Inc. on or about 16 May 2006. Plaintiff's average weekly wage from the job of injury was $600.00 per week which yields a compensation rate of $400.00.
2. The employer-employee relationship existed between plaintiff and defendant-employer Meisner, Inc. in that plaintiff was employed by defendant-employer Meisner, Inc. d/b/a IHOP on or about 29 May 2007. Plaintiff's average weekly wage from the job of injury was $800.000 per week which yields a compensation rate of $533.32.
3. Plaintiff was employed with defendant-employers and the parties were subject to and bound by the provisions of the Workers' Compensation Act, and defendant-employers had workers' compensation insurance coverage through defendant-carriers at all relevant times herein.
4. On or about 16 May 2006, plaintiff suffered an admittedly compensable work injury to his back while working for McLean Foods, Inc., in Pitt County, North Carolina. Plaintiff was a resident of Greenville, North Carolina in Pitt County and was an assistant Manager for defendant-employer. Although a Form 60, Form 63 or Form 21 was not initially filed, this claim was accepted as compensable by virtue of the payment of temporary total disability from 26 May 2006 to 1 January 2007, and payment of all medical treatment, with the exception of the items that are the subject of this decision, from the date of accident up to the date of the hearing before the deputy commissioner. Defendant McLean Foods has not paid for any treatment or medications after April 2008 when plaintiff was released by Dr. Nunez from the Pitt County Memorial Hospital Pain Clinic. Defendant McLean Foods and plaintiff have entered *Page 3 
into a Form 21 Agreement for the payment of a 15% permanent partial disability as a result of the admittedly compensable claim occurring on or about 16 May 2006. Defendant McLean Foods has made no payment of any temporary total disability payments for any time missed from work as a result of the alleged incident described in paragraph 5 below.
5. On or about 29 May 2007 or before, plaintiff alleges that he suffered a compensable work accident leading to an aggravation or re-injury of his previous back injury while working for 4438 Meisner, Inc. d/b/a IHOP in New Bern, Craven County, North Carolina. Plaintiff was a resident of Greenville, North Carolina in Pitt County and was an assistant Manager for the defendant-employer. Defendant-employer Meisner and its carrier have denied that plaintiff suffered a compensable accident or aggravation or re-injury of a previous injury by filing a Form 61 dated 31 August 2007.
6. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
7. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
8. The issues for determination are:
 a. Whether plaintiff suffered a compensable aggravation of his back injuries in May 2007, while working for defendant Meisner?
 b. Whether plaintiff suffered a compensable change of condition or continuation of his previous accepted back claim in May 2007, for which defendant McLean Foods is responsible?
 c. Whether defendant Meisner is wholly or partly responsible for the aggravation of plaintiff's back injuries of May 2007? *Page 4 
 d. To what benefits is plaintiff entitled and are either or both defendants responsible for payment?
 e. Which average weekly wage should be used to calculate plaintiff's benefits?
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Pretrial
 b. Stipulated Exhibit #2: (Sections 1-4) I.C. Forms, discovery, medical records
 c. Stipulated Exhibit #3: (Sections 5-6) Medical records, misc. items
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit #1: email re: Wendy's wages
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 46 years old. Plaintiff's relevant employment history consists of working in managerial positions for fast food restaurants. He is currently employed by a Wendy's restaurant in Tarboro, North Carolina, earning an average weekly wage of $643.00. *Page 5 
2. Plaintiff sustained a compensable injury to his low back on 16 May 2006, while working for Taco Bell, also known as McLean Foods (henceforth defendant-employer McLean). On that date, plaintiff was working on a ladder changing a light bulb and received an electrical shock which caused him to fall off the ladder onto his posterior, injuring his low back.
3. Plaintiff has a long history of back problems prior to his 16 May 2006 work injury, for which he received treatment. In a note dated 28 July 2004, Dr. Barbara Lazio with Eastern Neurosurgical Spine indicated that plaintiff had a long history of back problems which plaintiff himself attributed to a 20-year history of professional wrestling.
4. On 21 November 2005, plaintiff underwent a bilateral laminectomy and foraminotomy with discectomy at L4-5 as performed by Dr. Lazio.
5. Following the incident on 16 May 2006, plaintiff presented to Dr. George Klein at HealthNow Medical Center on 17 May 2006 with primary complaints of lower back pain radiating down into the right leg that was "sharp and burning." At a follow up visit on 22 May 2006, plaintiff noted that the pain had worsened with "sharp pain and some tingling in the right leg with urination."
6. On 24 May 2006, plaintiff returned to Dr. Lazio who noted that since the November 2005 surgery, plaintiff had been doing fairly well with only minor residual soreness. After the 16 May 2006 fall, Dr. Lazio noted that plaintiff was experiencing a burning sensation in his right leg that went down the back of his leg into his toes. She ordered an MRI and kept him out of work until it was completed.
7. An MRI of plaintiff's lumbar spine obtained on 30 May 2006 showed L4-5 postsurgical changes, including enhancing epidural scar tissue and moderate bilateral L4-5 foraminal stenosis, but no significant recurrent disc herniation or root compression. Following *Page 6 
her review of the MRI, Dr. Lazio referred plaintiff for a series of epidural steroid injections and released him to return to work with restrictions which included no lifting greater than 25 pounds.
8. Plaintiff was again written out of work beginning on 13 June 2006 while treating with Dr. Lazio. On 19 July 2006, plaintiff returned for follow-up with Dr. Lazio who diagnosed low back and right leg pain, ordered a myelogram and held plaintiff out of work for an additional two weeks. A myelogram obtained on 7 August 2006, revealed L4-5 postsurgical changes, but no evidence of recurrent disc herniation. On 13 August 2006, plaintiff was written out of work through 19 September 2006.
9. On 19 September 2006, Dr. Lazio referred plaintiff to pain management because he did not have any significant root compression on his lumbar myelography. On 28 September 2006, plaintiff began receiving pain management treatment from Dr. Ann Nunez, a physical medicine and rehabilitation physician at the Brody School of Medicine. Dr. Nunez diagnosed chronic low back pain, post laminectomy syndrome, history of lumbar stenosis and degenerative disc disease. Dr. Nunez discussed various options with plaintiff, including conservative versus surgical treatment. Plaintiff indicated his desire to continue taking the rest of his medications.
10. By 11 November 2006, Dr. Lazio noted that plaintiff's right leg pain had essentially resolved, although he complained of some left leg pain for the prior month along with ongoing low back pain. Dr. Lazio opined that plaintiff had reached maximum medical improvement and gave him a 15% permanent impairment rating to his back. She released him to return as needed, but urged him to continue with pain management.
11. Liability was accepted and defendant-employer McLean Foods paid appropriate workers' compensation benefits, including temporary total disability benefits from the date of *Page 7 
injury until plaintiff went to work for IHOP at the end of 2006, earning the same or a greater average weekly wage as he earned at the time of his injury.
12. Near the end of December 2006, plaintiff began working for defendant-employer Meisner at the International House of Pancakes (IHOP) in New Bern as an Assistant Manager. He continued to receive ongoing pain management treatment from Dr. Nunez during the time he worked for defendant-employer Meisner.
13. At plaintiff's visit with Dr. Nunez on 2 April 2007, plaintiff noted that he was having some trouble with his Fentanyl patch. He rated his pain at a 6 out of 10 and described it as being centered in his low back and as constant and dull. There was no mention of leg pain. Dr. Nunez switched plaintiff from Vicodin to Percocet.
14. Plaintiff returned to Dr. Nunez on 2 May 2007. Plaintiff complained of a level 5 on the pain analog scale. Dr. Nunez characterized plaintiff's pain as localized in the back and constant and dull. Dr. Nunez opined that plaintiff's current treatment plan was not satisfactorily addressing his chronic low back pain and indicated her intention to switch plaintiff back to OxyContin and to stop the Lyrica and the Percocet.
15. On 23 May 2007, Dr. Nunez noted that plaintiff was very happy that for the first time after a long while plaintiff felt that his pain was well controlled. Plaintiff classified his pain as a level 2 on the pain analog scale. Dr. Nunez indicated that plaintiff needed to continue taking his current medications and that he should return in three months time.
16. On or about 29 May 2007, during plaintiff's overnight shift with defendant-employer Meisner, plaintiff dropped a spatula and instinctively grabbed for it. He felt an immediate pop in his back that eventually led to a stabbing pain in his back and an electric pain running down his right leg. The pain prevented plaintiff from being able to drive, and he called *Page 8 
his wife to pick him up. Plaintiff maintains that he reported the injury to his supervisor, Mike Meisner.
17. On 31 May 2007, plaintiff returned for his scheduled follow-up with Dr. Nunez, who noted plaintiff's 27 May 2007 work injury, in which plaintiff bent over to pick up a cooking utensil and strained his back. Dr. Nunez noted that plaintiff characterized his back pain as about 6 to 7 in intensity localized in the back and in the right leg and as constant and stabbing from the time of the 27 May 2007 incident. Dr. Nunez assessed a superimposed strain of plaintiff's back, advised plaintiff to increase his ibuprofen and to start taking Flexeril. She wrote plaintiff out-of-work to return light duty effective 4 June 2007 and to follow with his back surgeon, Dr. Lazio. Plaintiff testified that he called into his job with defendant-employer Meisner, but was told that there was no light duty work available.
18. On or about 25 June 2007, plaintiff sought out and obtained a job as a Manager with Wendy's in Tarboro, NC. Plaintiff began working for Wendy's on 6 July 2007, at an average weekly wage of $673.08. Plaintiff has not worked anywhere else since he last worked for defendant-employer Meisner on 26 May 2007.
19. Shortly after the incident at IHOP, plaintiff was involved in a motor vehicle accident while traveling north on Memorial Drive in Greenville, North Carolina when another vehicle pulled in front of him. Plaintiff testified that while the motor vehicle accident did not hurt his condition, it did not help it. Plaintiff testified that he went to the hospital, because he had tensed up when he realized he was about to be involved in a collision, and that he was experiencing muscle spasms.
20. On 5 August 2007, plaintiff had a severe flare up of his back and leg pain when trying to get up off a toilet. The pain was severe enough that plaintiff presented to the *Page 9 
Emergency Department at Pitt County Memorial Hospital in Greenville where he was treated by Dr. Michael Sharts, a neurosurgeon with Eastern Neurosurgical Spine, the same medical group to which Dr. Lazio belongs.
21. Dr. Sharts ordered an MRI and concluded that plaintiff had a severe degenerated disc at the L4-5 level with compression of the L5 nerve root on the right. Consequently, he performed a redo decompression of plaintiff's nerves and a fusion of the L4-5 level. Upon operating on plaintiff's back, Dr. Sharts found that the L5 nerve root was in fact compressed. Dr. Sharts opined that the problems, for which he operated on plaintiff in August 2007, were an aggravation of the condition that had previously been treated for by Dr. Lazio at the time he had been released by her on November 21, 2006.
22. Dr. Sharts indicated that following the August 2007 surgery, plaintiff's back pain was much improved such that he was released to light duty work as a shift manager at Wendy's on 26 September 2007. Plaintiff returned to work for Wendy's on 1 October 2007, earning the same wage he had been making with them prior to the August surgery. At the time of the hearing of this matter, plaintiff was still employed in the same position with Wendy's.
23. Dr. Sharts has not found plaintiff to be at maximum medical improvement and has not issued a final rating to plaintiff's back.
24. Dr. Sharts reviewed records from Pitt County Memorial Rehabilitation/Pain Clinic dated 2 April 2007, 2 May 2007, 23 May 2007, and 31 May 2007. Dr. Sharts opined that the May 2007 work incident, as described to Dr. Nunez on 31 May 2007, more likely than not caused his recurrent condition and necessitated the 5 August 2007 surgery. This opinion was based on a number of factors including the fact that plaintiff began suffering from a change in the intensity and quality of pain after the reported incident which was indicative of a nerve root *Page 10 
irritation that could be from a new pathology. Further, the fact that plaintiff's right leg was hurting on 31 May 2007 and not the prior visit, made Dr. Sharts believe that the work related incident reported to Dr. Nunez was the most likely cause of plaintiff's surgery and was a significant contributing cause to the need for surgery. Dr. Sharts opined that the mechanism of injury indicated by plaintiff, in which he reached for a dropped cooking utensil, was consistent with the condition for which he operated on plaintiff.
25. Dr. Sharts did not believe the automobile accident was of much significance with regard to plaintiff's condition, nor did he think that the act of getting off the toilet the day plaintiff went to the hospital in August 2007 was the cause of plaintiff's problems. Consequently, the undersigned find that these two events did not play a role in plaintiff's ongoing back problems, his disability, or in his need to have surgery in August 2007.
26. Dr. Nunez reviewed the chart from the 31 May 2007 visit, and agreed that plaintiff had experienced a change in his pain from the previous visit. Dr. Nunez noted that the quality of plaintiff's pain had changed in that it was stabbing, versus the dull, throbbing pain that plaintiff had described before. Dr. Nunez concluded that plaintiff had suffered a setback as of 31 May 2007. Dr. Nunez opined that the work-related incident of 27 May 2007 aggravated plaintiff's pre-existing condition with respect both to his back pain and the leg pain that resulted from it.
27. Mike Meisner and Arnold Smith, Manager and Assistant Manager at the IHOP store where plaintiff worked testified that they were not aware that plaintiff had hurt his back on the job and that plaintiff did not report any injury to them. Larry Meisner, owner of the IHOP franchise where plaintiff worked, testified, as did Mike Meisner, that plaintiff was fired from his *Page 11 
job on 28 May 2007, because of cash shortages that occurred on plaintiff's shifts during the week ending 27 May 2007.
28. Due to conflicts in the testimony provided by these three witnesses, including the fact that a number of alleged cash shortages occurred at times when plaintiff was not at work, the undersigned assign little credibility to this testimony and find as fact that plaintiff was terminated for reasons related to his compensable injury by accident.
29. The Full Commission finds based upon the greater weight of the credible evidence that plaintiff suffered a specific traumatic incident on or about 29 May 2007 while working for defendant-employer Meisner at IHOP when he reached to catch a spatula that had fallen.
30 The May 2007 work-related incident resulted in a material change of condition in and aggravation of plaintiff's pre-existing back condition and substantially contributed to the necessity of plaintiff's August 2007 surgery by Dr. Sharts. Further, the greater weight of the expert medical testimony shows that the conditions necessitating the August 2007 surgery were not causally related to the 16 May 2006, incident.
31. As a result of the compensable injury to plaintiff during the course and scope of his employment with defendant-employer Meisner, plaintiff was temporarily and totally disabled from 29 May 2007 through 5 July 2007, and from 5 August 2007 through 30 September 2007.
32. Plaintiff's average weekly wage while working for defendant-employer Meisner was $800.000 per week which yields a compensation rate of $533.32 per week.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 12 
1. Plaintiff sustained an injury resulting from a specific traumatic incident of the work assigned arising out of and in the course of the employment on or about 29 May 2007 with defendant-employer Meisner. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the expert medical testimony shows that any medical treatment received by plaintiff subsequent to the May 2007 related injury is not related to the 16 May 2006 injury for which defendant-employer McLean Foods accepted responsibility. Accordingly, the undersigned concludes that there is sufficient evidence presented to overcome any presumption that additional medical treatment is directly related to the 16 May 2006 compensable injury, and defendant-employer McLean Foods is not responsible for any benefits under the Act after 27 May 2007. Parsons v. Pantry, Inc., 126 N.C. App. 540, 542,485 S.E.2d 867, 869 (1997).
3. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $533.32 per week for the period from 29 May 2007 through 5 July 2007, and from 5 August 2007 through 30 September 2007. N.C. Gen. Stat. § 97-29.
4. Plaintiff did not constructively refuse suitable employment.Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397
(1996). Under the Seagraves test, to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury. Id.
5. As plaintiff has reached maximum medical improvement following the August 2007 surgery, plaintiff is entitled to temporary partial disability at the rate of 2/3 the difference in *Page 13 
his earnings after 29 May 2007 and the $800.00 per week wages he earned with defendant-employer Meisner. The temporary partial disability shall continue until such time as plaintiff is found to be at maximum medical improvement, rated and allowed to choose whatever would be his most munificent remedy. N.C. Gen. Stat. §§ 97-29; 97-30.
6. Plaintiff is entitled to have defendant-employer Meisner pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1; N.C. Gen. Stat. § 97-2(19).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants 4438 Meisner, Inc. and Crawford Company shall pay temporary total disability compensation to plaintiff at the rate of $533.32 per week for the period from 29 May 2007 through 5 July 2007 and from 5 August 2007 through 30 September 2007. As said compensation has accrued, it shall be paid in a lump sum.
2. Subject to a reasonable attorney's fee herein approved, defendants 4438 Meisner, Inc. and Crawford Company shall pay temporary partial disability compensation at the rate of 2/3 the difference in his earnings after 29 May 2007 and the $800.00 per week wages he earned with defendant-employer Meisner. The temporary partial disability shall continue until such time as plaintiff is found to be at maximum medical improvement, rated and allowed to choose whatever would be his most munificent remedy. *Page 14 
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraphs 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel as follows. One fourth of the lump sum payment shall be paid directly to plaintiff's counsel. Thereafter, every fourth payment in temporary partial disability shall be paid directly to plaintiff's counsel. Upon plaintiff's reaching maximum medical improvement and his subsequent election of benefits, plaintiff's counsel shall be paid one fourth of the final amount paid to plaintiff.
4. Defendants 4438 Meisner, Inc. and Crawford Company shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures, including the costs of the August 2007 surgery.
5. As plaintiff has not reached maximum medical improvement, this Opinion does not address the issue of permanent partial disability. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
6. Defendants 4438 Meisner, Inc. and Crawford Company shall pay the costs.
This the 17th day of June 2009.
 S/_____________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER *Page 1